[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10597
Non-Argument Calendar
_____

D.C. Docket No. 8:12-cv-02476-JSM-TGW

CATHY MCMAHON,

Plaintiff-Appellant,

versus

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____
(September 24, 2014)

Before HULL, MARCUS and FAY, Circuit Judges.

PER CURIAM:

Cathy McMahon appeals the district court's order affirming the Social

Security Administration's denial of her application for disability insurance

benefits, 42 U.S.C. § 405(g), and disabled widow's benefits, 42 U.S.C. § 402(e)(1). Although the Administrative Law Judge ("ALJ") found that McMahon was disabled due to several mental impairments, the ALJ also found that McMahon's alcohol use was a contributing factor material to her disability determination, and thus McMahon could not be considered disabled for purposes of Social Security benefits. After review, we affirm.[1]

## I.    FIVE-STEP SEQUENTIAL EVALUATION

A claimant for Social Security benefits must prove that she is disabled. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); 42 U.S.C. §§ 402(e)(1), 423(a)(1)(a). 20 C.F.R. § 404.1520(a)(2), (a)(4). To determine whether the claimant is disabled, the ALJ employs a five-step process. 20 C.F.R. § 404.1520(a)(2), (a)(4).

Under the first step, the claimant has the burden to show that she is not currently engaged in substantial gainful activity. Id. § 404.1520(a)(4)(i). At the second step, the claimant must show she has a severe impairment. Id. § 404.1520(a)(4)(ii). A severe impairment is an "impairment or combination of

---

[1]Our review is limited to whether the ALJ's decision is supported by substantial evidence and based on proper legal standards. Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. (internal quotation marks omitted). Under this limited standard of review, we do not make findings of fact, reweigh the evidence, or substitute our judgment for that of the Commissioner. Id.

impairments which significantly limit[ ] [the claimant's] physical or mental ability to do basic work activities." Id. § 404.1520(c). Step two is a threshold inquiry, and the ALJ does not go on to step three if the claimant fails to meet step two, but rather determines that the claimant is "not disabled." McDaniel v. Bowen, 800 F.2d 1026, 1032 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the claimant must show that her severe impairment meets or equals the criteria in the Listings of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). At step four, if the claimant cannot meet or equal one of the Listings, the ALJ considers whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. Id. § 404.1520(a)(4)(iv). Finally, if the claimant establishes she cannot perform her past relevant work, the burden shifts to the Commissioner to show that significant numbers of jobs exist in the national economy that the claimant can perform in light of her RFC, age, education, and work experience. Id. § 404.1520(a)(4)(v); Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).

In evaluating the severity of the claimant's mental impairments at step two, the ALJ first evaluates the signs, symptoms, and laboratory findings to determine whether the claimant has a medically determinable mental impairment (called the "paragraph A criteria") and then rates the degree of functional limitation from the mental impairments in four areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation (called the

3

"paragraph B criteria"). 20 C.F.R. § 404.1520a(a)-(d). If the ALJ rates the claimant's limitations as "none" or "mild" in the areas of activities of daily living, social functioning, and concentration, persistence, or pace, and "none" in the area of episodes of decompensation, the claimant's mental impairments will be found to be "not severe." Id. § 404.1520a(c)(3), (d)(1).

## II. DISABILITY WHERE THERE IS EVIDENCE OF ALCOHOLISM

If the ALJ finds at step three that the claimant is disabled, and there is medical evidence of alcoholism, the ALJ must then determine whether the alcoholism was a material contributing factor to the disability determination. Id. § 404.1535(a); see also 42 U.S.C. § 423(d)(2)(C) (providing that "[a]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled"). The "key factor" in determining whether alcoholism is a material contributing factor to the disability determination is whether the claimant would still be found disabled if she stopped using alcohol. 20 C.F.R. § 404.1535(b)(1). "In making this determination, [the ALJ evaluates] which of [the claimant's] current physical and mental limitations, upon which [the ALJ] based [her] current disability determination, would remain if [the claimant] stopped using drugs or alcohol and then determine[s] whether any or all of [the claimant's] remaining limitations would be disabling." Id. § 404.1535(b)(2). If

the ALJ determines that the claimant's remaining limitations would not be disabling if she stopped using alcohol, then the ALJ will find that the alcoholism is a contributing factor material to the determination of disability.  Id. § 404.1535(b)(2)(i).  If that determination is made, the claimant is not considered disabled under the Social Security Act.  42 U.S.C. § 423(d)(2)(C).  The claimant bears the burden to prove that she would be disabled if she stopped using alcohol. Doughty v. Apfel, 245 F.3d 1274, 1275-76 (11th Cir. 2001).

### III.  ALJ'S DECISION

At steps one and two, the ALJ determined that McMahon had not engaged in substantial gainful activity since June 1, 1992, her alleged onset date,[2] and had the severe impairments of depression, anxiety, dependent personality traits, and alcohol dependence.  At step three, the ALJ found that McMahon's severe mental impairments, including her substance use disorder, met Listings 12.04 (affective disorders), 12.06 (anxiety-related disorders), 12.08 (personality disorders), and 12.09 (substance addiction disorders).   In addressing the paragraph B criteria at step 2, the ALJ noted that: (1) the medical evidence showed that McMahon had "*significant* issues with alcohol dependence"; and (2) McMahon had "resided in

---

[2]McMahon appears to argue that the ALJ erred in using the onset date of June 1, 1992, alleged in her applications for benefits, rather than September 24, 1997, the date McMahon's attorney cited in a pre-hearing memorandum.  We note that McMahon did not object at the disability hearing when the ALJ indicated her disability onset date was 1992.  In any event, McMahon has not shown prejudice from the ALJ's use of the earlier onset date.

residential treatment facilities on more than one occasion" and "when [McMahon was] under the influence of alcohol she has exhibited suicidal ideation, poor insight and judgment, confusion, psychomotor retardation, etc." As a result, the ALJ found "marked restriction in activities of daily living, moderate difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, and at least one to two episodes of decompensation of extended duration." Thus, McMahon's mental impairments, including the substance use disorder, met the paragraph B criteria.

Because the disability finding included McMahon's alcohol use, the ALJ then considered whether McMahon's remaining limitations would have caused more than minimal impact on her ability to perform basic work activities during the periods at issue if McMahon had stopped using alcohol. The ALJ determined that McMahon's other limitations would not have significantly limited her ability to perform basic work activities.

In making this determination, the ALJ applied the two-part "pain standard" for evaluating a claimant's subjective symptoms and concluded that, if McMahon stopped her alcohol use: (1) her medically determinable impairments could reasonably be expected to produce the alleged symptoms; but (2) her statements about the intensity, persistence, and limiting effects of her symptoms were not

6

credible "to the extent they are inconsistent with finding that [McMahon] has no severe impairment or combination of impairments" absent her alcohol abuse.

The ALJ explained that McMahon had provided little evidence to support a finding that she was disabled prior to either September 30, 1997 (for disability insurance benefits), or March 13, 2003 (for disabled widow's benefits). Noting that McMahon was in an inpatient facility for alcohol dependence in 1983, in alcohol rehabilitation in 1984, and arrested for marijuana possession in 1998, the ALJ stated that McMahon's file suggested that McMahon's "history is that of chronic alcoholic dependence and, perhaps, drug abuse issues."

McMahon's file showed no medical treatment activity until 1994, when McMahon began drinking again and was discharged from nursing school. At that time, McMahon appeared older then her age and exhibited impaired insight and judgment, but was cooperative and did not display evidence of paranoia, hallucinations, or delusions, and had intact recent and remote memory. McMahon underwent a mental status exam and was diagnosed with adjustment reaction with depressed mood and anxiety, dependent personality traits, and alcohol dependence. Thereafter, McMahon received "sporadic treatment" for: (1) alcohol withdrawal in 1995, during which she was "fully aware" that she had a problem, displayed "fairly good motivation," was fully alert, oriented, and cooperative, and was discharged within five days; and (2) six-month substance abuse treatment in March 1996, after

7

which she was "successfully discharged" with a "very positive outlook on her recovery." In 1996, McMahon completed one college degree and began working on another. The ALJ found that this evidence did not "support [McMahon's] allegations of disabling mental issues." In 1997, McMahon experienced a "crisis," which appeared to be a relapse, and withdrew from her studies. In 1998, McMahon was admitted to a crisis stabilization unit with suicidal ideations, but the ALJ noted that this treatment was also tied to her substance abuse.

Based on this evidence, the ALJ found that, for purposes of disability insurance benefits, from McMahon's onset date (June 1, 1992), McMahon sought treatment only sporadically, during which treatment notes showed she was alert, cooperative, and in no jeopardy of harming herself or others, and up to the point when her insured status expired (September 30, 1997), she exhibited problems, but they were all related to her alcoholism.

With respect to disabled widow's benefits, the ALJ found that McMahon did not seek further treatment until 2001, when she enrolled in a 60-day detox program. McMahon was discharged in June 2001 with a GAF score of 80,[3] and did not receive any follow-up treatment prior to the date of her remarriage (March 13, 2003). In sum, the ALJ found that the medical evidence did not show that the

---

[3]The Global Assessment Functioning (GAF) Scale ranges from 1 to 100, and a score of 80 indicates transient symptoms with no more than slight impairment in social, occupational, or school functioning. See Diagnostic and Statistical Manual of Mental Disorders, at 34 (4th ed. text rev. 2000).

medically determinable impairments, aside from alcoholism, caused more than a minimal limitation on McMahon's ability to perform basic work activities. The ALJ noted that, during the relevant period: (1) McMahon had several intact mental status exams, "particularly during periods after a detoxification program was completed"; and (2) there was "little to no evidence" of complaints of panic attacks and no evidence of alleged physical limitations or medication side effects.

As to opinion evidence, the ALJ gave considerable weight to the State agency mental assessments, which included a 2009 psychological exam by Dr. Melissa Trimmer and a 2009 psychiatric review technique completed by Dr. Carol Deatrick. Dr. Trimmer opined, inter alia, that McMahon was "capable of understanding and following simple instructions and directions" and appeared "cognitively capable of performing complex tasks, but had "difficulty dealing with stress." Dr. Trimmer diagnosed McMahon with major depression recurrent, alcohol dependence in full remission, and mix personality features. Dr. Deatrick opined, inter alia, that McMahon had no restrictions of activities of daily living, no difficulties in maintaining social functioning, mild difficulties maintaining concentration, persistence and pace, and no episodes of decompensation and that McMahon's mental status was essentially normal.

The ALJ concluded that without McMahon's alcohol dependence, the evidence showed only mild restrictions in three of the four "paragraph B"

9

functional areas (activities of daily living, social functioning, and concentration, persistence, or pace) and no episodes of decomposition for an extended period of time. "Because the remaining mental limitations would cause no more than 'mild' limitation in any of the first three functional areas and 'no' limitation in the fourth area, they would be nonsevere if the substance use was stopped." Accordingly, the ALJ determined that McMahon's substance use disorder was a contributing factor material to the determination of disability and that McMahon was not disabled within the meaning of the Social Security Act at any time between June 1, 1992 and September 30, 1997 (for disability insurance benefits purposes), or March 13, 2003 (for disabled widow's benefits purposes).

For these reasons, the ALJ denied McMahon's applications for benefits. The Appeals Council denied McMahon's request for review, making it the Commissioner's final decision. The district court affirmed the ALJ's decision.

## IV.  MCMAHON'S APPEAL

### A.    Five-Step Evaluation

McMahon's argument that the ALJ failed to follow the proper legal standards lacks merit. The ALJ followed the five-step process and, at steps one through three, found that McMahon had not engaged in substantial gainful activity since June 1, 1992, had several severe mental impairments, including her alcohol dependence, and that these impairments met Listings 12.04, 12.06, 12.08 and

12.09.  Because McMahon met the Listings, there was no need for the ALJ to determine McMahon's RFC and proceed to steps four and five.

Contrary to McMahon's assertions, the fact that the ALJ found that she met the Listing criteria does not render her immediately entitled to disability benefits because this determination included consideration of her alcohol abuse disorder. See 20 C.F.R. § 404.1535(a).  Similarly, the ALJ's determination that McMahon had the "severe impairments" of depression, anxiety, dependent personality traits, and alcohol dependence does not mean the ALJ necessarily found that the non-alcohol impairments were independently severe.  See id. § 404.1520(a)(4)(ii), (c) (explaining that at step two the ALJ considers whether the claimant has an impairment or combination of impairments that is severe).  Because there was medical evidence of McMahon's alcoholism, after the ALJ found that she met the Listings with her alcohol dependence and therefore was disabled, the ALJ was required to determine whether McMahon's alcohol dependence was a contributing factor material to that disability determination.  See 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 404.1535(b).  Thus, the ALJ correctly went on to determine whether McMahon would be disabled without alcohol use by going back to step two.  See 20 C.F.R. § 404.1535(b).  Finally, because the ALJ determined that McMahon did not satisfy the severe impairment requirement at step two without alcohol use, the

11

ALJ properly stopped her analysis there and did not proceed on to steps three through five.  See id. § 404.1520(c); McDaniel, 800 F.3d at 1032.

## B.    Medical Source Evidence

The ALJ also properly evaluated the medical opinion evidence in the record in concluding that McMahon's impairments were not severe.  See Sharfarz v. Bowen, 825 F.2d 278, 280-81 (11th Cir. 1987) (explaining that the ALJ is required to indicate and explain the weight assigned to different medical opinions).  The ALJ specifically addressed the weight given to each doctor's medical opinion.

Although McMahon contends the ALJ did not give proper weight to her mental health counselor's 1997 letters and the nurses' progress notes from McMahon's 2001 inpatient treatment for alcohol dependence, these documents do not constitute "medical opinions" because they are not statements from physicians or psychologists that reflect judgment about the nature and severity of McMahon's impairments.  See 20 C.F.R. § 404.1527(a)(2).[4]  Thus, the ALJ was not required to assign and explain the weight given to that evidence.  See id.; see also Sharfarz, 825 F.2d at 280-81.  Further, while the ALJ must address medical opinions explicitly, the ALJ is not required to address every piece of evidence in the record.

---

[4]In 1995, while in nursing school, McMahon was forced to withdraw from classes due to her drinking problem and, in order to remain in the nursing program, agreed to, among other things, seek counseling.  Between 1996 and 1997, Donna Roberts, a licensed mental health counselor and registered nurse, counseled McMahon and also wrote two letters to McMahon's university.

See Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (stating that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"); see also Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (noting that the ALJ should sufficiently explain the weight given to "obviously probative" evidence).

As McMahon concedes, the letters and progress notes were not from an "acceptable medical source" for determining whether McMahon had a medically determinable impairment. See 20 C.F.R. § 404.1513(a), (d). The ALJ may still consider evidence from nurses and therapists in determining the severity (rather than the existence) of medically determinable impairments. Id. § 404.1513(d). Here, however, neither the mental health counselor's letters nor the nurses' progress notes addressed the severity of McMahon's other mental impairments, that is, the degree to which those other mental impairments limited her ability to do basic work activities. See id. § 404.1521(a) & (b) (explaining that an impairment is non-severe "if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities").

The mental health counselor's letters did not describe any significant limitations on McMahon's mental ability to do basic work activities, except to say that McMahon found nursing school stressful, that "stress made it difficult for [McMahon] to continue to concentrate on her class work" and that McMahon had

13

"PMS related depression."  The mental health counselor, however, also requested that McMahon's university permit her to remain a student in good standing and later expressed surprise when McMahon was dismissed from the program. Moreover, the mental health counselor indicated that, although McMahon had failed a drug test, missed a counseling session, and admitted to drinking, McMahon had since put her recovery program back in place and understood her alcoholism. Thus, the mental health counselor's letters support, rather than undermine, the ALJ's finding that McMahon's alcoholism was a contributing material factor to her disability, and, if McMahon stopped using alcohol, her other mental impairments would not cause more than minimal impact on her ability to perform basic work activities during the relevant periods.

Likewise, the progress notes for McMahon's 2001 treatment for alcohol dependence do not contain any evidence of significant limitations caused by McMahon's other mental impairments.  These progress notes indicated, inter alia, that McMahon was sober, sleeping well, and working at a mortgage company and, importantly, that her alcohol dependence was in early remission and her major depression recurrent was in full remission.  In short, this evidence supported the ALJ's finding that, when McMahon was not using alcohol, McMahon's other mental impairments were not severe.

C.    McMahon's Subjective Symptoms

14

McMahon argues that the ALJ did not properly evaluate her subjective complaints. We disagree.

When a claimant attempts to establish disability through her own testimony about her subjective symptoms, a three-part "pain standard" applies. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). The pain standard requires: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Id. If the ALJ determined that the claimant has a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms, then the ALJ evaluates the extent to which the intensity and persistence of those symptoms limit her ability to work. 20 C.F.R. § 404.1529(b). At this stage, the ALJ considers the claimant's history, the medical signs and laboratory findings, the claimant's statements, statements by treating and non-treating physicians, and other evidence of how the pain affects the claimant's daily activities and ability to work. Id. § 404.1529(a).

A claimant's testimony supported by medical evidence that satisfies the pain standard is sufficient to support a finding of disability. Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995). If the ALJ decides not to credit a claimant's testimony about her symptoms, the ALJ "must articulate explicit and adequate

15

reasons for doing so.  Failure to articulate the reasons for discrediting subjective pain testimony requires . . . that the testimony be accepted as true."  Id. at 1561-62.

Here, the ALJ properly applied the pain standard, found that McMahon had medically determinable impairments (apart from her alcohol dependence) that could reasonably be expected to produce the alleged symptoms (primarily panic attacks and an inability to concentrate), but did not credit McMahon's statements about the intensity and persistence of those symptoms.  Further, the ALJ articulated specific reasons for discrediting McMahon's statements regarding the intensity, persistence, and limiting effects of her symptoms, explaining that: (1) McMahon provided minimal evidence regarding her disability; (2) up until September 30, 1997, the record showed that McMahon had problems, but those problems were all related to her alcoholism; (3) McMahon not only attended college during this time period, but also graduated from college; and (4) there was no evidence to corroborate McMahon's alleged panic attacks.  The ALJ properly discredited McMahon's subjective symptom testimony, and that credibility finding is supported by substantial evidence.[5]

D.    **Severity of Other Mental Impairments Without Alcohol**

---

[5]McMahon also complains that the ALJ did not consider her husband's 2009 questionnaire.  The ALJ was not required to explicitly address this piece of evidence in her decision, especially given that it was duplicative of McMahon's testimony, which the ALJ found not credible.

Finally, substantial evidence supports the ALJ's determination that McMahon's remaining mental impairments would have resulted in only mild limitations in the functional areas of activities of daily living, social functioning, and concentration, persistence, and pace, as well as no episodes of decompensation. The record showed that McMahon had intact mental functioning and improvement during periods when she was not drinking alcohol. During these times, she also successfully worked and went to school. Thus, the record contains relevant evidence that a reasonable person would accept as adequate to support a finding that McMahon's other mental impairments would not have a more than minimal impact on her ability to perform basic work activities if she stopped using alcohol. See Moore, 405 F.3d at 1211.

## V. CONCLUSION

For these reasons, substantial evidence supports the ALJ's determination that McMahon's alcohol use disorder was a contributing factor to the determination of disability and thus that McMahon was not disabled for purposes of disability insurance benefits or disabled widow's benefits.

**AFFIRMED.**